NUMBER 13-01-169-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 

 



DOUBLETREE HOTELS CORPORATION AND 

DOUBLETREE CLUB HOTEL SYSTEMS, Appellants,



v.




STEPHEN PERSON, Appellee.

 

On appeal from the 275th District Court of Hidalgo County, Texas.



O P I N I O N


Before Justices Yañez, Castillo, and Dorsey (1)

Opinion by Justice Yañez


 

 Appellants Doubletree Hotels Corporation ("the Corporation") and Doubletree Club Hotel Systems ("the
Club") bring this appeal from a negligence suit that resulted in a default judgment for Stephen Person in the
amount $5,290,095. We reverse and render.

Background 

 The underlying lawsuit arose from injuries Person allegedly suffered at a McAllen hotel when he stepped off
an elevator and fell. The elevator failed to fully descend all the way to the lobby, and its doors opened when
the floor of the elevator was higher than the lobby floor. The Club had a franchise agreement ("the
Agreement") with the hotel's owner/operator, Soza, Inc. ("Soza"). The Corporation is a separate entity and
had no agreement with Soza. 

 On February 12, 1997, Person filed his first amended petition in which he alleged negligence by several
entities, including an elevator maintenance company, Soza, the Club and the Corporation. Person settled with
Soza and the elevator maintenance company, for a total of $97,500. The Club and the Corporation,
purportedly relying on the Agreement, allege that they did not file an answer because they assumed Soza's
counsel was also handling their defense and would file an answer on their behalf.

 On September 21, 2000, a default judgment hearing on liability was held and the trial court granted an
interlocutory default judgment against both the Club and the Corporation on liability only. On September 29,
a damages hearing was held. At that hearing's conclusion, the trial court entered a final default judgment
vacating the interlocutory default judgment, reconfirming the Club and the Corporation's liability, and
awarding Person damages. On January 16, 2001, the Club and the Corporation filed a motion for new trial
and a motion to modify the judgment. The trial court allowed the motions to be overruled by operation of
law. This appeal ensued.

 Person concedes, on the current record, he has not shown that the Corporation owed him any duty. Thus,
our analysis will focus on the Club.

Standard of Review

 "The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff." 
Centeq Realty, Inc. v. Seigler, 899 S.W.2d 195, 197 (Tex. 1995). "The plaintiff must establish both the
existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort." Id. 
"The existence of duty is a question of law for the [trial] court to decide from the facts surrounding the
occurrence in question." Id. When the existence of a legal duty is called into question, the reviewing court
performs a de novo review to determine from the facts of the case if a duty arose. In re Humphreys, 880
S.W.2d 402, 404 (Tex. 1994); see City of McAllen v. De La Garza, 898 S.W.2d 809, 810 (Tex. 1995).

Applicable Law

A. Default Judgment

 Generally, "a judgment taken by default admits all allegations of fact set out in the petition, except for the
amount of damages." Morgan v. Compugraphic Corp., 675 S.W.2d 729, 732 (Tex. 1984). However, where
a defendant fails to file an answer and no liability exists against him as a matter of law on the facts alleged by
the plaintiff, then the fact that he has defaulted by failing to file an answer cannot create liability. See First
Dallas Petroleum, Inc. v. Madison, 727 S.W.2d 640, 645 (Tex. App.-Dallas 1987, no writ) (citingMorales v.
Dalworth, 698 S.W.2d 772, 775 (Tex. App.-Fort Worth 1985, writ ref'd n.r.e.)). (2)

B. Duty

 The Club offers persuasive case law that examines the franchisor/franchisee relationship and outlines the duty
owed by franchisors to third parties on franchise premises. In these situations, injured third parties (Person)
often accuse the franchisor (the Club) of negligence on the theory that the franchisor maintains an agency
relationship with the franchisee (Soza), who is the actual owner of the franchise premises (the hotel). A review
of these cases reveals that the vicarious liability of a franchisor in situations regarding negligence on the
premises of franchise property is limited to those franchisors that maintain specific control of the activity
concerning which negligence is charged. Risner v. McDonald's Corp., 18 S.W.3d 903, 906-07 (Tex.
App.-Beaumont 2000, pet. ref'd); see Smith v. Foodmaker, Inc., 928 S.W.2d 683, 684-87 (Tex. App.-Fort
Worth 1996, no writ); Ely v. General Motors Corp., 927 S.W.2d 774, 777-78 (Tex. App.-Texarkana 1996,
writ ref'd); O'Brant v. Century 21 South Central States, 899 S.W.2d 270, 271-72 (Tex. App.-Houston[14th
Dist.] 1995, no pet.); see also Seigler, 899 S.W.2d at 199; Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21-23
(Tex. 1993). According to this principle, in order to hold the Club liable for the elevator defect we must
conclude that the Club had control over the elevators at the hotel.

Analysis

 In his first amended petition, Person alleged the Club was negligent by failing to: (1) retain a competent
professional or consulting engineering firm to inspect the condition of the elevators, the machine room, and
related elevator equipment to determine what repairs and improvements needed to be made before Soza could
continue as a franchisee; (2) require Soza to make needed repairs and improvements to elevator machinery;
and (3) discover the comments, suggestions, and recommendations of the elevator maintenance company
concerning repairs to the elevator machinery. At the interlocutory default judgment hearing, Person offered,
and the trial court admitted, two citations and one certificate of service as evidence. At the final default
judgment hearing, Person testified and had several documents admitted as evidence, most of which related to
his injury.

 By several points of error, the Club challenges the trial court's entry of final default judgment for Person in his
negligence case. However, one of those points is dispositive of this appeal. The Club contends it cannot be
held liable to Person as a matter of law because it owes him no duty. We agree.

 The Club contends it did not have control over the hotel's elevators. The Club alleges that it only licensed the
use of the "Doubletree" name to Soza and, in return, asked that Soza respect and follow the aesthetic and
service standards that consumers associate with the name. The Club admits that the Agreement allowed the
Club to inspect the hotel to ensure that standards were being maintained, but the Club asserts the Agreement
did not grant it control over day-to-day operations, safety, or security.

 The Agreement confirms the Club's assessment. It states, in relevant parts:

 Neither Franchisor's review or approval of any plans, layouts, specifications or designs, nor any inspections of
the Hotel conducted by Franchisor during or after completion of the conversion shall constitute any express or
implied undertaking or representation by Franchisor that the same comply with any building, life safety,
environmental or other codes imposed by any governmental authority or that they comply with acceptable
architectural or engineering standards. Franchisor's specification, review or approval of any furniture, fixtures,
equipment or other item shall not constitute a warranty, express or implied, as to such time and Franchisor
shall not have any liability or responsibility with respect to the lack of suitability of, or defects in, any product
or building component. . . .



 All of the obligations of Franchisor hereunder are to Franchisee and Franchisee's assigns, and no other party is
entitled to rely on, enforce, or obtain relief for the breach of such obligations, either directly or indirectly, by
subrogation or otherwise. . . .



 Franchisee shall maintain the Hotel in accordance with the highest standards of repair and condition . . . . In
connection therewith, Franchisee shall make additions, alterations, repairs and replacements thereto as may be
required for that purpose.



The Agreement also expressly states that Soza is an independent contractor and no agency relationship exists
between the Club and Soza.

 When a contract, like the Agreement here, establishes an independent contractor relationship rather than an
agency relationship and does not grant control over the details of the contractor's (Soza's) work, then evidence
must be produced to show that despite the contract terms, the true relationship between the parties gave the
alleged principal (the Club) a right of control. Ely, 927 S.W.2d at 777-78 (citing Newspapers, Inc. v. Love,
380 S.W.2d 582, 592 (Tex. 1964)); see Tidwell, 867 S.W.2d at 21-22 n.3; Smith, 928 S.W.2d at 687;
O'Bryant, 899 S.W.2d at 272.

 In an attempt to demonstrate the Club's right of control over elevators at the hotel, Person points to letters
from the Texas Department of Licensing and Regulation that indicate that the elevator in question should have
been placed out of service until repaired and tested. However, these letters are addressed to a Ms. Kina
Mancilla at the franchise property, the hotel, and not to the Club. Person is not able to show that the Club
received the letters or that Ms. Kina Mancilla is an agent of the Club. These letters better demonstrate Soza's
control over the elevators, as they were mailed to the hotel site owned and operated by Soza and not to the
Club or an agent of the Club.

 Person also points to the Club's elevator inspection reports in an attempt to show the Club's amount of
control. The report states, in a pertinent note, "The owners will have an evaluation done to determine what
repairs are needed to put the elevators mechanically up to standard." Again, this better demonstrates Soza's
responsibility for the elevators than the Club's, since Soza was the hotel's owner. On its face, the note from
the report shows that the Club had put Soza in charge of following up on the condition of the elevators and
bringing them up to required standards. In conclusion, neither the letters nor the report show that the Club
specifically controlled the elevators.

 In Texas, a franchisor is held vicariously liable to third parties injured on franchise premises when the
franchisor maintains specific control of the activity concerning which negligence is charged. See Risner, 18
S.W.3d at 906-07; Smith, 928 S.W.2d at 684-87; Ely, 927 S.W.2d at 777-78; O'Brant, 899 S.W.2d at
271-72; see also Seigler, 899 S.W.2d at 199; Tidwell, 867 S.W.2d at 21-23. After reviewing the facts of this
case, we conclude that Person did not establish that the Club retained control over the elevators, either
through the Agreement with Soza or otherwise. See Risner, 18 S.W.3d at 906-07; Smith, 928 S.W.2d at
687; Ely, 927 S.W.2d at 778-79; O'Brant, 899 S.W.2d at 271-72; see alsoSeigler, 899 S.W.2d at 199;
Tidwell, 867 S.W.2d at 23. Thus, we hold that the Club, as franchisor, had no legal duty to protect Person
from elevator defects on franchise premises and is not liable for Person's injuries. See Seigler, 899 S.W.2d at
199.

 Even though the Club defaulted, the facts alleged by Person did not show the existence of a duty owed to him
by the Club. A default cannot create liability where none exists as a matter of law. See Madison, 727 S.W.2d
at 645; Morales, 698 S.W.2d at 775. The final default judgment cannot stand.

 We reverse and render judgment that Person take nothing from either the Club or the Corporation.


 

LINDA REYNA YAÑEZ

Justice









Opinion delivered and filed this the

17th day of July, 2003.

1. Retired Justice J. Bonner Dorsey assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. We acknowledge that these two cases deal with writs of error, now known as restricted appeals, rather than
a direct appeal, as this case presents. Both direct appeals and restricted appeals are procedural devices used to
directly attack default judgments. Glunz v. Hernandez, 908 S.W.2d 253, 255 n. 3 (Tex. App.-San Antonio
1995, writ denied). As such, we conclude the distinction does not affect our analysis of this case.