NUMBER 13-01-169-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

DOUBLETREE HOTELS
CORPORATION AND 
DOUBLETREE CLUB
HOTEL SYSTEMS,                                                              Appellants,

v.
 
STEPHEN PERSON,                                                           Appellee.
                                                                                                                                      

On appeal from the 275th District Court of Hidalgo County, Texas.
                                                                                                                      

OPINION ON REHEARING

Before Justices Yañez, Castillo, and Dorsey



Opinion by Justice Yañez

          In our original opinion in this case, we reversed and rendered the trial court’s default
judgment in favor of Stephen Person, appellant. See Hotel Sys. v. Person, No. 13-01-169-CV, 2003 Tex. App. LEXIS 6207 (Tex. App.–Corpus Christi July 7, 2003, no pet. h.). 
Person filed a motion for rehearing, which we now grant. In addition, we withdraw our
opinion and judgment of July 17, 2003, and substitute the following in its place.Appellants Doubletree Hotels Corporation (“the Corporation”) and Doubletree Club
Hotel Systems (“the Club”) bring this appeal from a negligence suit that resulted in a
default judgment for Stephen Person in the amount $5,290,095. We now reverse and
remand.
Background 
          The underlying lawsuit arose from injuries Person allegedly suffered at a McAllen
hotel when he stepped off an elevator and fell. The elevator failed to fully descend all the
way to the lobby, and its doors opened when the floor of the elevator was higher than the
lobby floor. The Club had a franchise agreement (“the Agreement”) with the hotel’s
owner/operator, Soza, Inc. (“Soza”). The Corporation is a separate entity and had no
agreement with Soza. 
          On February 12, 1997, Person filed his first amended petition in which he alleged
negligence by several entities, including an elevator maintenance company, Soza, the Club
and the Corporation. Person settled with Soza and the elevator maintenance company,
for a total of $97,500. The Club and the Corporation, purportedly relying on the
Agreement, allege that they did not file an answer because they assumed Soza’s counsel
was also handling their defense and would file an answer on their behalf.
          On September 21, 2000, a default judgment hearing on liability was held and the
trial court granted an interlocutory default judgment against both the Club and the
Corporation on liability only. On September 29, a damages hearing was held. At that
hearing’s conclusion, the trial court entered a final default judgment vacating the
interlocutory default judgment, reconfirming the Club and the Corporation’s liability, and
awarding Person damages. On January 16, 2001, the Club and the Corporation filed a
motion for new trial and a motion to modify the judgment. The trial court allowed the
motions to be overruled by operation of law. This appeal ensued.
          Person concedes, on the current record, he has not shown that the Corporation
owed him any duty. Thus, the analysis will focus on the Club.
Standard of Review
          “The threshold inquiry in a negligence case is whether the defendant owes a legal 
duty to the plaintiff.” Centeq Realty, Inc. v. Seigler, 899 S.W.2d 195, 197 (Tex. 1995). 
“The plaintiff must establish both the existence and the violation of a duty owed to the
plaintiff by the defendant to establish liability in tort.” Id. “The existence of duty is a
question of law for the [trial] court to decide from the facts surrounding the occurrence in
question.” Id. When the existence of a legal duty is called into question, the reviewing
court performs a de novo review to determine from the facts of the case if a duty arose. 
In re Humphreys, 880 S.W.2d 402, 404 (Tex. 1994); see City of McAllen v. De La Garza,
898 S.W.2d 809, 810 (Tex. 1995).
Applicable Law
A. Default Judgment
          Generally, “a judgment taken by default admits all allegations of fact set out in the
petition, except for the amount of damages.” Morgan v. Compugraphic Corp., 675 S.W.2d
729, 732 (Tex. 1984). However, where a defendant fails to file an answer and no liability
exists against him as a matter of law on the facts alleged by the plaintiff, then the fact that
he has defaulted by failing to file an answer cannot create liability. See First Dallas
Petroleum, Inc. v. Madison, 727 S.W.2d 640, 645 (Tex. App.–Dallas 1987, no writ) (citing
Morales v. Dalworth, 698 S.W.2d 772, 775 (Tex. App.–Fort Worth 1985, writ ref’d n.r.e.)).



B. Duty
          The Club offers persuasive case law that examines the franchisor/franchisee
relationship and outlines the duty owed by franchisors to third parties on franchise
premises. In these situations, injured third parties (Person) often accuse the franchisor
(the Club) of negligence on the theory that the franchisor maintains an agency relationship
with the franchisee (Soza), who is the actual owner of the franchise premises (the hotel). 
A review of these cases reveals that the vicarious liability of a franchisor in situations
regarding negligence on the premises of franchise property is limited to those franchisors
that maintain specific control of the activity concerning which negligence is charged. 
Risner v. McDonald’s Corp., 18 S.W.3d 903, 906-07 (Tex. App.–Beaumont 2000, pet.
ref’d); see Smith v. Foodmaker, Inc., 928 S.W.2d 683, 684-87 (Tex. App.–Fort Worth
1996, no writ); Ely v. General Motors Corp., 927 S.W.2d 774, 777-78 (Tex.
App.–Texarkana 1996, writ ref’d); O’Brant v. Century 21 South Central States, 899 S.W.2d
270, 271-72 (Tex. App.–Houston[14th Dist.] 1995, no pet.); see also Seigler, 899 S.W.2d
at 199; Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21-23 (Tex. 1993). According to this
principle, in order to hold the Club liable for the elevator defect we must conclude that the
Club had control over the elevators at the hotel.
Analysis
          In his first amended petition, Person alleged the Club was negligent by failing to: (1)
retain a competent professional or consulting engineering firm to inspect the condition of
the elevators, the machine room, and related elevator equipment to determine what repairs
and improvements needed to be made before Soza could continue as a franchisee; (2)
require Soza to make needed repairs and improvements to elevator machinery; and (3)
discover the comments, suggestions, and recommendations of the elevator maintenance
company concerning repairs to the elevator machinery. At the interlocutory default
judgment hearing, Person offered, and the trial court admitted, two citations and one
certificate of service as evidence. At the final default judgment hearing, Person testified 
and had several documents admitted as evidence, most of which related to his injury.
          By several points of error, the Club challenges the trial court’s entry of final default
judgment for Person in his negligence case. The Club contends it did not have control over
the hotel’s elevators. The Club alleges that it only licensed the use of the “Doubletree”
name to Soza and, in return, asked that Soza respect and follow the aesthetic and service
standards that consumers associate with the name. The Club admits that the Agreement
allowed the Club to inspect the hotel to ensure that standards were being maintained, but
the Club asserts the Agreement did not grant it control over day-to-day operations, safety,
or security.
          The Agreement confirms the Club’s assessment. It states, in relevant parts:
Neither Franchisor’s review or approval of any plans, layouts, specifications
or designs, nor any inspections of the Hotel conducted by Franchisor during
or after completion of the conversion shall constitute any express or implied
undertaking or representation by Franchisor that the same comply with any
building, life safety, environmental or other codes imposed by any
governmental authority or that they comply with acceptable architectural or
engineering standards. Franchisor’s specification, review or approval of any
furniture, fixtures, equipment or other item shall not constitute a warranty,
express or implied, as to such time and Franchisor shall not have any liability
or responsibility with respect to the lack of suitability of, or defects in, any
product or building component. . . .
 
All of the obligations of Franchisor hereunder are to Franchisee and
Franchisee’s assigns, and no other party is entitled to rely on, enforce, or
obtain relief for the breach of such obligations, either directly or indirectly, by
subrogation or otherwise. . . .
 
Franchisee shall maintain the Hotel in accordance with the highest standards
of repair and condition . . . . In connection therewith, Franchisee shall make
additions, alterations, repairs and replacements thereto as may be required
for that purpose.

The Agreement also expressly states that Soza is an independent contractor and no
agency relationship exists between the Club and Soza. Because the Agreement does not
assign specific control of the elevators to the Club, we hold that the Agreement creates no
legal duty for the Club, as franchisor, to protect Person from elevator defects on the
franchise premises.
          In sum, the Agreement establishes an independent contractor relationship rather
than an agency relationship and does not grant control over the details of the contractor’s
(Soza’s) work. As such, in order to otherwise establish the duty element, Person must
produce evidence to show that, despite the Agreement’s terms, the true relationship
between Soza and the Club gave the alleged principal (the Club) a right of control. See
Ely, 927 S.W.2d at 777-78 (citing Newspapers, Inc. v. Love, 380 S.W.2d 582, 592 (Tex.
1964)); O’Bryant, 18 S.W.3d at 907.
          In an attempt to demonstrate the Club’s right of control over elevators at the hotel,
Person offers purported examples of the Club’s actual control. Person points to letters
from the Texas Department of Licensing and Regulation that indicate that the elevator in
question should have been placed out of service until repaired and tested. However, these
letters are addressed to a Ms. Kina Mancilla at the franchise property, the hotel, and not
to the Club. Person is not able to show that the Club received the letters or that Ms. Kina
Mancilla is an agent of the Club. These letters better demonstrate Soza’s control over the
elevators, as they were mailed to the hotel site owned and operated by Soza and not to the
Club or an agent of the Club.
          Person also points to the Club’s elevator inspection reports in an attempt to show
the Club’s amount of control. The report states, in a pertinent note, “The owners will have
an evaluation done to determine what repairs are needed to put the elevators mechanically
up to standard.” Again, this better demonstrates Soza’s responsibility for the elevators
than the Club’s, since Soza was the hotel’s owner. On its face, the note from the report
shows that the Club had put Soza in charge of following up on the condition of the
elevators and bringing them up to required standards. Consequently, neither the letters
nor the report show that the Club specifically controlled the elevators. Thus, Person has
not yet shown that the Club had a right of control, outside of the Agreement.
          After reviewing this case, we conclude that Person has not established that the Club
retained control over the elevators, either through the Agreement with Soza or otherwise. 
See Risner, 18 S.W.3d at 906-07; Smith, 928 S.W.2d at 687; Ely, 927 S.W.2d at 778; 
O’Brant, 899 S.W.2d at 271-72; see also Seigler, 899 S.W.2d at 199; Tidwell, 867 S.W.2d
at 23.  Even though the Club defaulted, the record before us does not show the existence
of a duty owed to Person by the Club. A default cannot create liability where none exists
as a matter of law. See Madison, 727 S.W.2d at 645; Morales, 698 S.W.2d at 775. The
final default judgment cannot stand.
          The judgment of the trial court is REVERSED. The case is REMANDED to the trial
court with instructions to proceed in accordance with this opinion.
 
 
                                                                                                                       
                                                               LINDA REYNA YAÑEZ
                                                                           Justice





Opinion delivered and filed this the
11th day of December, 2003.