Affirmed and Memorandum Opinion filed February 10, 2009








Affirmed and Memorandum Opinion filed February 10, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00747-CV

____________

 

JANE BOTTENSTEIN, PH.D.,
INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED FEMALE PROFESSIONAL EMPLOYEES, Appellant

 

V.

 

UNIVERSITY OF TEXAS MEDICAL BRANCH
AT GALVESTON,
Appellee

 



 

On Appeal from the 56th
District Court

Galveston County, Texas

Trial Court Cause No. 04CV1037

 



 

M E M O R A N D U M   O P I N I O N

In this appeal involving an underlying action for
retaliation and gender discrimination, a university professor complains the
trial court erred in denying her motion to abate a hearing on the university=s motion for
summary judgment when the university, her former employer, allegedly withheld
critical discovery documents.  We affirm.








I.  Factual and Procedural
Background

Appellant Jane Bottenstein, Ph.D., worked as an assistant
professor for appellee University of Texas Medical Branch at Galveston (the AUniversity@) starting in
1981.  She resigned in 2006.  Dr. Bottenstein filed suit against the University
in September 2004, alleging retaliation and gender-based discrimination.[1]


The trial court initially issued a docket control order,
requiring discovery to be completed by December 1, 2005.  Both parties have characterized the
lengthy discovery period as being Aplagued@ with disputes.  After a number of
events, the trial court amended its docket control order on two subsequent
occasions.  

The
April 2006 Hearing and Discovery Agreement

By
agreement at a hearing in April 2006, in open court, the parties agreed to
first address Dr. Bottenstein=s individual claims stemming from within her department, then
if Dr. Bottenstein met the requirements for class certification, a second level
of discovery would continue on a university-wide basis to address the class
claims.  As reflected in the record from the hearing, the parties agreed to the
following:

$                  
The University would produce
additional data, including funding and grant information for all individuals in
Dr. Bottenstein=s department, both male and female, over the next
thirty days.

$                  
Within ninety days after receiving
that information from the University, Dr. Bottenstein would provide the
University with amended answers to interrogatories and an amended complaint
addressing matters raised in the University=s
special exceptions and interrogatories.

$                  
Dr. Bottenstein would furnish an
expert report concerning her status as a class representative and comparable
employees within her department, and Dr. Bottenstein would file a motion for
class certification within 120 days of the hearing.








$                  
At an unspecified time after the
certification decision, the parties would conduct additional university-wide
discovery based on Dr. Bottenstein=s
class claims and require a supplemental expert report on the class-wide claims.

The
October 2006 Agreement and Docket Control Order

The
parties entered into agreement under Texas Rule of Civil Procedure 11 in
October 2006, setting the following terms:

$                  
Dr. Bottenstein will provide the
University with amended answers to interrogatories and amend Dr. Bottenstein=s complaint addressing issues raised in the University=s special exceptions and motion to compel on or before
January 1, 2007.

$                  
Dr. Bottenstein will provide the
University an initial expert report addressing Dr. Bottenstein=s status as a class representative and providing any
comparables in the department on or before January 1, 2007.

$                  
Dr. Bottenstein will provide a
motion for class certification on or before February 1, 2007.

$                  
The University will respond to Dr.
Bottenstein=s motion for class certification on or before May 1,
2007.

$                  
Dr. Bottenstein will produce a
signed medical release to the University on or before October 12, 2007.

The trial court issued a third and final docket control
order on October 13, 2006, setting the following deadlines:

December 1, 2006           Deadline
to join and serve additional parties

January 7, 2007              Deadline
to designate all of plaintiff=s experts

February 7, 2007             Deadline
to designate all other experts

March 1, 2007                 Deadline
for all Robinson challenges to be filed and heard

July 31, 2007                   Deadline
to complete discovery

July 1, 2007                    Deadline
to complete mediation

July 9, 2007                    Deadline
to set hearings on all motions

August 13, 2007               Pretrial
conference

August 20, 2007               Trial
setting








Dr.
Bottenstein filed the expert report on January 17, 2007.   A dispute arose
concerning Dr. Bottenstein=s expert witness, Dr. Springer, and his
expert report.  The University
moved to strike the expert on a number of grounds.  At a hearing in April 2007,
on the University=s motion and in response to the University=s motion to strike
the expert, Dr. Bottenstein countered that she twice requested production of Adata underlying
[the University=s] salary evaluations.@  Dr. Bottenstein
complained that the University provided conclusory salary inequity studies, but
that the University did not provide underlying data for Dr. Springer to apply
in his analysis.  The trial court did not rule on the motion to strike the expert
and ordered the parties to work together in scheduling the expert=s deposition,
which had been cancelled several times.

The University=s Motion for Summary Judgment and
Dr. Bottenstein=s Motion to Abate the Hearing on Summary Judgment

Dr.
Bottenstein filed her motion for class certification on January 23, 2007, and the University
filed its response in opposition on May 7, 2007.  The University also filed a
motion for traditional and no-evidence summary judgment on May 7, 2007, and
filed a supplemental motion for summary judgment on June 7, 2007. 

Dr. Bottenstein did not
file a response to the University=s summary judgment motion.  Instead, on June 26, 2007, Dr.
Bottenstein filed a motion to abate the hearing on the University=s motion for summary judgment. 
According to Dr. Bottenstein=s motion, the trial court=s docket control order needed to be amended in order to
address discovery pertaining to her motion for class certification, which was
still pending before the trial court.  In support of her motion, Dr.
Bottenstein alleged the following Afor good cause@:

$                  
Dr. Bottenstein
had not deposed the University=s witnesses nor taken depositions as to the University=s liability.

$                  
Dr. Springer=s deposition, as taken by the
University, on May 17, 2007, was not transcribed until June 14, 2007.








$                  
Dr. Springer=s deposition revealed that the
University provided deficient data[2]
for his analysis as evidenced by his expert report.

$                  
A[The University] submitted a disk
containing the underlying data for the first time within the last two weeks. 
The disk produced by the State is labeled SOM [School of Medicine] Study Data
2001.  The University has obviously retained the data collected since 2001 but
has chosen not to produce the information until the ninth (sic) hour. . . . 
After the data was obtained, the information was transmitted to [Dr.
Bottenstein=s] expert by letter dated June 19,
2007.  The expert has been retained to review the data so that [Dr.
Bottenstein] may supplement the motion for class certification.@

$                  
Dr. Bottenstein
now requests a forty-five day extension to generate an amended expert report.  At
the end of the forty-five days, Dr. Bottenstein requests an additional ten days
to amend her motion for class certification and an additional ten days for the
University to respond to that motion.

$                  
Once the trial
court rules on her motion for class certification, Dr. Bottenstein requests a
new docket control order allowing for a one-year period of discovery for both
the class and individual claims in order to designate an expert on the second
stage of trial.

The University responded with the following assertions:

$                  
Dr. Bottenstein
failed to set her motion for class certification for hearing before the July 9,
2007 deadline set forth in the third docket control order.  

$                  
Dr. Bottenstein=s motion to abate should be
characterized as a motion for continuance, which should not be granted Aexcept for sufficient cause
supported by affidavit@ under Texas Rule of Civil
Procedure 251. 

$                  
Even though Dr.
Bottenstein complains that she has not taken the University=s witnesses= depositions, she never has
requested depositions of such witnesses during the three-year discovery period.


$                  
Dr. Bottenstein
never Aclearly articulated@ what raw data she sought until the
University sought such clarification during the expert=s deposition.  








$                  
The University,
in May 2007, provided 2001 raw data as described by the expert in the
deposition.  However, the University complains that it is unable to produce the
2003 raw data because it is in an outside vendor=s possession, and that vendor has declined to
produce the data without a subpoena.[3] 


$                  
The discovery
in this case has lasted for over three years, and Dr. Bottenstein has not been
diligent in procuring the information.  

$                  
The evidence
sought by Dr. Bottenstein is not material to summary judgment on Dr.
Bottenstein=s individual claims because the
University provided departmental data in May 2005, and twice supplemented
university-wide the information.  The 2003 raw data was relevant only to Dr.
Bottenstein=s university-wide class
certification claims.

$                  
Dr. Bottenstein=s class-certification claims fail
because she resigned her position and is no longer a class representative with
a justiciable claim.  The University=s motion for summary judgment addresses the individual
claims.  Therefore, the court should rule on the summary judgment motion before
ruling on the class certification claims.

At the summary-judgment hearing on July 2, 2007, the
University argued that under Texas Rule of Civil Procedure 166a(i), the trial
court is obligated to grant the University=s no-evidence
motion for summary judgment if, as in this case, Dr. Bottenstein, failed to
respond when there has been Aadequate time for discovery@ and the
University demonstrates that evidence is lacking for elements of Dr.
Bottenstein=s claim.  The University asserted the case had been on
file for three years and acknowledged the discovery deadline was to expire on
July 31, 2007, in less than one month.  In urging that all of Dr. Bottenstein=s wage claims
would be time-barred except for a 2003 salary decision, the University alleged
it could prove that the 2003 salary decision was based on Dr. Bottenstein=s poor performance
in procuring grants and funding and in not producing published works. 








Dr. Bottenstein responded by referring to the agreement of
counsel in open court, apparently in reference to the April 2006 hearing, in
which she understood, though by admitted mistake, that no discovery was to
occur until the class-certification claim had been approved by the trial
court.  Dr. Bottenstein argued that her request at the April 2006 hearing, at
which time her counsel requested production of Aadditional data,
including the grant information for all people in [Dr. Bottenstein=s] department,
both male and female, grant and funding information,@ encompassed a
request for the underlying raw data for the 2001 and 2003 university-conducted
studies.  Dr. Bottenstein urged the trial court to consider that the University
only recently had provided the underlying data for the 2001 study but not for
the 2003 study.  According to Dr. Bottenstein, once she had the underlying data
for both years, then the expert could generate an adequate report, the court
could rule on Dr. Bottenstein=s class-certification claims, and then
discovery could proceed.

The University contended that it had produced the
departmental information in response to Dr. Bottenstein=s individual
claims as requested at the April 2006 hearing.  However, the University denied
knowing about any request for the university-wide raw data for the 2001 and
2003 salary studies until learning from the expert=s deposition what
additional information was needed.  The University argued that such data would
support Dr. Bottenstein=s class-certification claims, but not the
individual claims, upon which the motion for summary judgment is based. 
According to the University, summary judgment was appropriate based on the
departmental data already provided for the individual claims.

By two separate orders, both dated August 6, 2007, the
trial court denied Dr. Bottenstein=s motion to abate
and granted the University=s motion for summary judgment.  Dr.
Bottenstein now alleges that the trial court committed reversible error in
denying her motion to abate.

II.  Analysis








In her sole issue, Dr. Bottenstein argues the trial court
erred in denying her motion to abate the hearing on the University=s motion for
summary judgment.  According to Dr. Bottenstein, the University did not comply
with discovery requests for the underlying raw salary data for the University=s 2001 and 2003
studies, and, as a result, the trial court=s denial of her
motion limited her opportunity for adequate discovery to develop her claims or
defenses. 

As a preliminary matter, we consider whether Dr.
Bottenstein=s motion to abate is more aptly characterized as a
motion to continue, as the University urges.  Appellant has not cited any procedural rule that
contemplates a motion to abate a summary judgment hearing.  However, a trial
court may grant a continuance of a summary judgment hearing if the party
opposing the motion demonstrates by affidavit that the party Acannot for reasons
stated present by affidavit facts essential to justify his opposition.@  Tex.
R. Civ. P. 166a(g).  In resolving this matter, we recognize that the
substance of a motion, and not its title, determines the relief sought.  See
Surgitek, Bristol-Myers Corp. v. Abel, 997 S.W.2d 598, 601 (Tex. 1999); see
also Tex. R. Civ. P. 71 (A[W]hen a party has
mistakenly designated any plea or pleading, the court, as justice so requires,
shall treat the plea or pleading as if it had been properly designated.@).  Therefore, in
deciding this issue, we do not focus on the title of Dr. Bottenstein=s motion, but
rather on the nature and purpose it serves.  

In her motion, Dr. Bottenstein alleged that the University
had withheld discovery, and, as a result, she sought relief in the following
ways:  a forty-five-day extension to generate an amended expert report, a
ten-day extension to amend her class certification, a ten-day extension for the
University to respond to the class-certification, and an amended docket control
order providing for a full year of discovery on both the class-certification
claims and individual claims.  Because of the nature of the relief sought, i.e.
an extension of time to conduct discovery, generate an expert report, or file
class-certification, we construe the substance of her motion as a motion for
continuance.  See Tex. R. Civ. P. 251, 252. 








A motion
for continuance should not be granted except upon a showing of sufficient cause
supported by an affidavit.  Tex. R. Civ.
P. 251.  Under Texas Rule of Civil Procedure 252, an affidavit in
support of a motion for continuance must state the materiality of the evidence
sought and that the party has exercised due diligence in seeking the evidence. 
Tex. R. Civ. P. 252; see
Risner v. McDonald=s Corp., 18 S.W.3d 903, 909 (Tex. App.CBeaumont 2000, pet. denied). 
However, conclusory statements of diligence do not satisfy this requirement.  See
Gregg v. Cecil, 844 S.W.2d 851, 853 (Tex. App.CBeaumont 1992, no pet.) (requiring a
party to state with particularity what diligence was used to procure the
evidence).  Rather, the supporting affidavit must contain factual statements.

Dr. Bottenstein attached the following documents to her
motion:  an affidavit by her attorney swearing to the truth of the facts in the
motion, a photocopy of a compact disk purportedly containing the controverted
2001 raw data, and a condensed transcript of the expert=s deposition on
May 17, 2007.  Although the attached affidavit contains attestations to the
truth of the matters stated in the motion, the affidavit does not contain an
assertion of materiality or that she has exercised due diligence in obtaining
the needed discovery, as required.  See Tex. R. Civ. P. 252; Risner, 18 S.W.3d at
909.  But
even presuming that Dr. Bottenstein=s motion facially
met the requisites of Rule 252, the trial court did not abuse its discretion in
denying a continuance.  

We consider on a case-by-case basis whether a trial court
committed a clear abuse of discretion in denying a motion for continuance.  BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002).  A trial
court is deemed to have abused its discretion when it reaches a decision so
arbitrary and unreasonable as to amount to a clear and prejudicial error of
law.  Id.  A reviewing court considers the following
non-exclusive factors in determining whether the trial court abused its
discretion in denying a motion for continuance containing a request for
additional time to conduct discovery:  (1) the length of time the case has been
on file, (2) the materiality and purpose of the discovery sought, and (3)
whether the party seeking the continuance has exercised due diligence to obtain
the discovery sought.  Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d
150, 161 (Tex. 2004).  








In this case, the University moved for summary judgment on
Dr. Bottenstein=s individual claims on both traditional
and no-evidence grounds.  The University also sought summary judgment on its
limitations defense under the Texas Labor Code.  The case had been on file for
nearly three years before the University filed its motion.  After the trial
court thrice amended the docket control order, the period for discovery was set
to expire in approximately one month after Dr. Bottenstein filed her motion.  See
Joe, 145 S.W.3d at 160, 162 (describing how case had been on file for less
than two months, but providing trial court did not abuse its discretion in
denying motion for continuance). Therefore, the first Joe factor weighs
in favor of the University.

As to the second Joe factor, Dr. Bottenstein has not
demonstrated the materiality or purpose of the underlying data as it pertains
to her individual claims, upon which the motion for summary judgment is based. 
According to Dr. Bottenstein, the 2001 and 2003 data is relevant to creating a
response to the summary judgment motion, but she has failed to identify the
data=s materiality
beyond explaining that consumed within the data are the reasons for the
departmental salary decisions.  Dr. Bottenstein does not describe the 2001 and
2003 data itself or further explain its materiality.  See Duerr v. Brown,
262 S.W.3d 63, 78 (Tex. App.CHouston [14th Dist.] 2008, no pet.).  In
this case, the 2001 and 2003 data, as described, could not have raised a fact
issue as to Dr. Bottenstein=s individual claims within her department.[4] 
Accordingly, this factor favors the University.








Under the third Joe factor, we consider the
diligence of the party seeking the continuance.  Dr. Bottenstein has not
pointed to any place in the record in which she asked precisely for that data
in exercising her due diligence.  Instead, she argues that her request at the
April 2006 hearing for Aadditional data, including the grant
information for all people in [Dr. Bottenstein=s] department,
both male and female, grant and funding information,@ encompasses the
request for the 2001 and 2003 data.  We do not conclude that a request for
departmental grant and funding information is the same as a request for 2001
and 2003 raw data supporting university-wide salary studies.  Moreover, Dr.
Bottenstein did not aver that she had filed a motion to compel this precise
discovery.  See O=Kane v. Coleman, No.
14-06-00657-CV, 2008 WL 2579832, at *7 (Tex. App.CHouston [14th
Dist.] Jul. 1, 2008) (mem. op.).  A[T]he failure of a
litigant to diligently utilize the rules of civil procedure for discovery
purposes will not authorize the granting of a continuance.@  State v. Wood
Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988). 

We conclude Dr. Bottenstein failed to identify Afacts essential to
justify [her] opposition@ to the University=s motion for
summary judgment.  See Tex. R. Civ. P. 166a(g); Joe, 145 S.W.3d at 162.  On this record, we
cannot conclude the trial court=s denial of Dr. Bottenstein=s motion was so
arbitrary and unreasonable as to constitute a clear and prejudicial error of
law.  See id.  Finding no abuse of discretion in the trial court=s denial of the
motion, we overrule Dr. Bottenstein=s sole issue and
affirm the trial court=s judgment.[5]


 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Panel consists of
Justices Anderson and Frost and Senior Justice Hudson.*

 









[1]  Dr. Bottenstein also asserted a class-action claim
on these grounds, filing her motion for class certification on January 23,
2007.





[2]  Dr. Bottenstein cited various places in Dr. Springer=s deposition, which was attached to Dr. Bottenstein=s motion, in which Dr. Springer complained that the
University did not provide the underlying raw salary data for the University=s 2001 and 2003 studies that were furnished to Dr.
Bottenstein for Dr. Springer=s analysis of
faculty salaries.  In her motion to abate, Dr. Bottenstein complains only of
underlying data for 2001.  However, at a hearing concerning the University=s motion for summary judgment, Dr. Bottenstein also
complained of underlying data for 2003 in support of the motion to abate the
hearing.





[3]  At a hearing on the University=s motion for summary judgment, the University admitted
it was unsuccessful in procuring the 2003 raw data from an outside vendor and
that it had not served the vendor with a subpoena for the information.  The
University also admitted it was unsuccessful in its attempts to access the
information from a password-protected computer account of a former employee,
but that such attempts, even if successful, would corrupt the data.  However,
the record reflects that the outside vendor produced the 2003 salary study data
to the University, who, in turn, provided the information to Dr. Bottenstein on
July 17, 2007, after the hearing on the University=s motion for summary judgment but before the trial
court ruled on the University=s summary
judgment motion.





[4]  Moreover, such data would not have raised a fact
issue with regard to her claims of retaliation, which do not implicate Dr.
Bottenstein=s salary.





[5]  Dr. Bottenstein argues only that the trial court
erred in denying her motion to abate, and does not challenge the trial court=s granting of the University=s motion for summary judgment.





*  Senior Justice Harvey Hudson sitting by assignment.